UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NED GUERRA,

          Plaintiff,

  v.                                         Case No. 21-cv-34-pp

OFFICER MELISSA SPRANGERS,
AARON GOLDSTEIN, FOND DU LAC
POLICE DEPARTMENT and JOHN DOE,

          Defendants.

**ORDER DENYING PLAINTIFF'S REQUEST TO WAIVE PAYMENT OF THE INITIAL PARTIAL FILING FEE (DKT. NO. 10) AND ORDERING PLAINTIFF TO PAY INITIAL PARTIAL FILING FEE**

      Plaintiff Ned Guerra, a person incarcerated at the Fond du Lac County Jail who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights during his August 14, 2019 arrest. Dkt. No. 1. On February 16, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $5.77; he needed to pay this initial partial filing fee before the court could rule on his motion to proceed without prepaying the full filing fee. Dkt. No. 9.

      Two weeks later, the court received from the plaintiff a letter asking the court to waive payment of the initial partial filing fee. Dkt. No. 10. The plaintiff said that he was unable to pay the initial partial filing fee because he had "no money in [his] account rec[ei]ved no income as money from family or friends." Id. He said that in lieu of payment, he "w[ould] enclose an agreement with the jails accountist [sic] (Janet) to take the $5.77 out of [his] account upon [his] release from jail to be paid to the Clerk of the East Dist. Court of Wisconsin."

Id. The plaintiff said that the agreement "w[ould] be either enclosed with this letter or sent or faxed to the Clerk's office in the very near future." Id. The plaintiff said that he did not want to dismiss the case and said that he would make arrangements with the jail to pay the $5.77 fee "once [his] account exceeds $10.00." Id. There was no "agreement" included with the plaintiff's letter and since then, the court has not received anything further from the plaintiff or the jail.

At the bottom of the letter was a note to the Clerk of Court, written in different handwriting than the rest of the letter. The note to the clerk says, in part, that "it may be necessary for you to contact the Fond du Lac Co. jail's accountist [sic] Janet [and] explain to her about how to make arrang[e]ment to deduct the screening fee from my account once I get money. So that my case is not tossed out." Id. The note goes on to say, "I've tried to explain it to her, but she's not understanding whats to be done or required to do." Id. The note says the jail is "not used to" people who file civil cases, so the jail staff "do not understand the seriousness of legal issues." Id.

The court has the authority to waive the initial partial filing fee under 28 U.S.C. §1915(b)(4) if a plaintiff lacks both the "assets" and the "means" to pay it. The Court of Appeals for the Seventh Circuit has explained that "[i]t is not enough that the prisoner lacks assets on the date he files." Newlin v. Helman, 123 F.3d 429, 435 (7th Cir. 1997), overruled in part on other grounds by Walker v. O'Brien, 216 F.3d 626, 628-29 (7th Cir. 2000), and Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000). If that were the case, an incarcerated person could avoid paying the initial partial filing fee by spending what is in his trust account before filing his lawsuit. For that reason, the court construes the

word "means" broadly. An incarcerated person may lack "assets" but still have "means" to pay the fee.

The plaintiff filed two trust account statements from the jail—one covering April 1 through October 5, 2020 and the other covering June 1 through December 31, 2020. Dkt. Nos. 6, 8. Those statements show that the plaintiff received several deposits into his trust account, ranging from $18 to $50. Dkt. No. 6. In almost every instance, the plaintiff immediately spent the money on phone time and items from the commissary. For example, the plaintiff received a $12 deposit on April 16, 2020 and a $35 deposit on April 17, 2020. Dkt. No. 6 at 1. The same day he received the $35 deposit, he spent $9 for phone time and five days later spent $31.82 for items from the commissary. Id. The remaining $3 he spent on photocopies. Id. On May 8, 2020, the plaintiff received a $20 deposit. Id. at 5. Four days later, he spent $8 for phone time and the next day spent $9.48 at the commissary, leaving only $0.52 in his account. Id. On May 19, 2020, he received a $35 deposit, immediately spent $11 on phone time and the next day spent $19.45 (all but $2.07 from his account) at the commissary. Id. This pattern continued from June through December 2020. The plaintiff occasionally spent money on medical expenses or photocopies, but the bulk of his spending was for phone time and commissary items. Of note is a July 15, 2020 deposit of $50, of which he spent $48.90 the same day on items from the commissary. Id. at 3.

On September 4, 2020, the plaintiff was charged $121.95 for damaging a mattress. Dkt. No. 8 at 2. Just over three weeks later, he was charged $7.97 for a replacement shirt. Id. A portion of the deposits he received after that date were taken to pay for the mattress and the shirt. Id. at 1–2. Again, he spent most of the remaining balance in the account on items from the commissary—

$10.99 on November 25, 2020, and $9.97 on December 9, 2020—leaving him with only $0.03 in the account. Id. The plaintiff was charged $0.02 for medical expenses, leaving his final balances as of December 31, 2020 at $0.01, with $145.89 in medical debt, $1.89 in photocopy debt and $108.29 remaining on his debt for the damaged property (the mattress and replacement shirt). The court received the complaint on January 8, 2021, but the plaintiff signed it on December 25, 2020. Dkt. No. 1 at 6.

The statements indicate that the plaintiff chooses to spend his money on phone time and commissary items, despite having hundreds of dollars in debt for medical visits, photocopies and damaged property. Even after money was taken from his account to pay down his debts, he had sufficient funds remaining to cover the $5.77 initial partial filing fee, but he chose to spend that money on commissary items. The plaintiff may lack the *assets* to pay the initial partial filing fee (because he spent the money he received), but he does not lack the *means* (because he has received multiple deposits into his account). In other words, he lacks the funds to pay the initial partial filing fee only because he chose to spend his deposits on phone time and other purchases. There is no difference between an inmate "who has chosen to spend 100% of his income on lawsuits, and an inmate who chooses to dispose of 100% of his income on canteen items shortly before filing a new lawsuit or appeal." Lindell v. McCaughtry, No. 01-C-209-C, 2004 WL 225074, *1 (W.D. Wis. Jan 23, 2004). Moreover, initial partial filing fees assessed under §1915(b)(1) "are to receive priority over plaintiff's other debts." Gillitzer v. Dep't of Corr., No. 10-CV-749-BBC, 2011 WL 925566, at *1 (W.D. Wis. Mar. 14, 2011); see Newlin, 123 F.3d at 435 (noting that initial partial payments are to "come off the top" of all deposits to a prisoner's account).

The court concludes that §1915(b)(4) does not apply in these circumstances. The plaintiff has received multiple deposits from which he could have put aside money to pay the initial partial filing fee. He chose to spend his money on phone calls and commissary items. If the plaintiff wishes to proceed in this case, he must pay the $5.77 initial partial filing fee. The court will give the plaintiff additional time to pay the fee. If he does not pay the $5.77 fee by the deadline the court sets below, the court will dismiss the case without prejudice. Alternatively, the plaintiff may file a motion to voluntarily dismiss his case, then refile the complaint once he has saved enough money to pay the required initial partial filing fee.

The plaintiff has asked the Clerk of Court to contact the jail to arrange payment of the initial partial filing fee. That is not the clerk's responsibility—it is the *plaintiff's* responsibility to arrange payment of litigation expenses. The court will not make these arrangements for him.

The plaintiff should prioritize paying the initial partial filing fee over his other expenses. He should send the $5.77 fee once he has that money and should not wait until he has $10.00 in his account. If the plaintiff does not believe he will have the money to proceed until he is released from jail, he may dismiss the lawsuit and refile it when he is financially able to litigate it, taking into account the fact that under Wis. Stat. §893.53, civil rights claims usually must be filed within three years.

The court also notes that the plaintiff has filed a motion asking the court to appoint a lawyer to represent him and he asked the court to act on that motion as soon as feasible. Dkt. No. 5. The court will not rule on that motion until the plaintiff has paid the initial partial filing fee.

5
Case 2:21-cv-00034-PP   Filed 04/19/21   Page 5 of 6   Document 11

The court **DENIES** the plaintiff's letter request to waive payment of the $5.77 initial partial filing fee. Dkt. No. 10.

The court **ORDERS** that if the plaintiff must pay the initial partial filing fee of $5.77 in time for the court to receive it by the end of the day on **June 4, 2021**. If the court does not receive $5.77 by the end of the day on June 4, 2021 the court will dismiss the case without prejudice. If the plaintiff wishes to avoid being responsible for the entire filing fee, he may—by June 4, 2021—file a motion asking to voluntarily dismiss the case.

Dated in Milwaukee, Wisconsin this 19th day of April, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**